Good morning, Your Honor, and counsel for the United States. I am Christina D'Eoduardo representing Mr. Alvarez in this matter. I believe Mr. Pridham, who was formerly with our firm, did the brief. Your Honors, what this case, as the Court's aware from having read, trying to find a way to not quite get as much feedback there, as the Court's aware, the position of Mr. Alvarez in this case is that there is a difference between an officer's hunch and probable cause. In this particular instance, the hunch at the end of the day turns out to be accurate. There's no dispute that when law enforcement ultimately enter Mr. Alvarez's home, they find contraband. But that's not, I would say, I would suggest to the Court the primary issue before the panel today. The issue is how we got there. As the Court's aware, this case begins when an SFPD officer is working with a confidential source. To this day, no one outside of the SFPD knows who this individual is. The confidential source tells them, hey, I've got this guy, he says he can sell me heroin and methamphetamine. The officer directs them to set up a meeting. Part of those two controlled buys that the CS has is not with Mr. Alvarez or Chewy, the individual that the CS is talking about. But, Counsel, with respect, if I recall the record correctly, Officer Torci did observe a controlled buy with Chewy, which confirmed what the CI had said. Isn't that correct? Your Honor, perhaps I misread it, but as I understood it, all of the transactions were between the confidential informant and, since we don't have the individual's name, we'll call him Mr. Runner, since he's considered to be a runner in this situation, and Mr. Runner said later, as I recall from the record, that Officer Torci did take a surveillance photo. Well, but there's a little bit more here. As I read the record, and maybe I read it wrong, it's all somewhere right at 4 ER 449 to 450. After the confidential informant tells the officers whatever he tells them, the officers listen to a phone call between the CI and Alvarez, and that phone call is about a drug deal. And then they observe these two sales, not with Alvarez but with another person, that follow on that phone call. So it seems to me that there is reasonable ground to believe at some point that Alvarez is associated with these drug deals because the police listen to them set these up with Alvarez, and then they watch and listen to the deals going down with somebody purportedly sent on his behest. So why doesn't that all add up to enough probable cause, together with the CI's statement, which has now sort of been confirmed that this guy is in the drug business, to search his apartment? I think, Your Honor, because at the first part of it, they don't – I would suggest that they don't know who that other person is. Right. But they're not – at that point, they're not getting a warrant and they're not doing any searches. Correct. So by the time they get the warrant – and then they do a ping on – they also do a ping on the apartment building and find out where he lives and confirm that he's there. Right. So at that point, when you put all those facts together, which is really the first time they go to the magistrate to get the warrant to search the apartment, why don't – why doesn't that conglomeration of facts add up to probable cause? I'm glad Your Honor brought that up. I would – I think what our position is on that is that the initial – because that warrant to search the apartment is several warrants down the road. It's two – I think – I think it's the third, right? I think it's two warrants down the road. I may be wrong. I think it's one after the ping and one before the cell warrant. Right. Because I think, as I recall, Your Honor, the last warrant is when – after they search the house, Officer Terzi secures two phones. The phones. That's the last one. Correct, Your Honor. That's the cell warrant. Right. The first one is the ping. The second one is the house. The second – right. And I think the second one – but I believe there's also a second – if memory serves, there's actually a second one looking at cell phone – There are two cell phone location warrants. Right. But it strikes me that that's – looks a lot like this sort of incremental investigation and probable cause around the phone, given the view of the buy and the information about the phone number. So let's figure out where that phone is. Another warrant to figure out where the phone is. And then probable cause to figure out where the house is, that the drugs might be in the house. So it seems like the investigator is working pretty incrementally here at each time. Where's the gap that you see as your strongest argument? Where we would see as some of the argument, Your Honor, I know that the brief does discuss as well that they're actually seeking information that I believe post-ates and pre- – there's some mismatch between the information that's sought and the information that the warrant was approved. But with respect, Counsel Lee, I mean, you're a good lawyer. You're trying to defend your classic, well-planned, sequential follow-up. You get the C.I.'s information. The C.I. says there's a drug deal going down. They listen in on a phone call. And each step they've proceeded based on the previous information. That's the very thing that the Fourth Amendment requires. And I get your point. You're trying to say it's all based on the C.I., but it isn't, is it? I think it is initially, Your Honor, because they never get – and I think that comes back to what I said at the beginning, which is there's no dispute that the hunch happens to be correct. There's no dispute that at the end of the day – And that's true in every Fourth Amendment case. Exactly. Otherwise, it's a 1983 case. If something wasn't seized, you wouldn't be here. Certainly, Your Honor. Yeah. Otherwise, it's a 1983 case. But I think that what we have is the only person that has any interaction with Chewy or, if you will, Mr. Alvarez, is that confidential source. And that's some of the reason why we had raised the concerns that we did about things about that source that were not passed on to the magistrates. But it was corroborated, as I think we're all saying here. If it was just the C.I. and there was never anything else, and you have this unknown person, that's different. Right. But we've all referred to the fact you had listening on phone calls. Later on, you were listening at the ping. You had the calling of the number, Chewy picks it up, and then it hangs up when they hang up. I mean, it's all corroborated. Sure. So, with respect, I don't know how this helps you. I understand, Your Honor. Again, as with the United States and the panel, I take the facts as I find them. Ms. D'Edoardo, I wonder if I could focus on maybe the fourth warrant, an issue that troubles me a bit. There is a officer, the officer swears out in his affidavit. Probable cause to search, not just the communications of the phone, which the officer suggests could be related to a drug trafficking conspiracy, but then media on the phone, photographs on the phone, solely on the basis, at least on my read of it, of probable cause for violent crimes, of which there's no probable cause. Then there are photographs taken from the phone pursuant to that warrant. I believe some of them were introduced at trial. But in view of all of the other evidence, can you help me with why that, if there were not probable cause with respect to that evidence, the media evidence on the phone, why that wouldn't be subject to either a good-faith exception or harmless error? Certainly, Your Honor. And I'm glad the Court brought that up. Where I know that the United States has a language that they agree that no one's alleging that Mr. Alvarez was involved in any violent crimes. And even Officer Tersi seems to be saying, based on my training and experience, when there are violent crimes happening, this is what occurs. But I think it strains the point to assume that Officer Tersi, as an experienced law enforcement officer, would put anything in that warrant application that he didn't think wouldn't help. He's not going to include surplusage. And I think that's the point. But just a — I mean, because there are distinct categories. There's — there are the — what I'll call the communication content of the phones, texts, voicemails, call logs. And then there — which are — are alleged to be supported by probable cause with respect to drug trafficking, because that's how the trafficking happens. Right. But then there's the media photographs. What if that's just kind of boilerplate that he forgot? What if it's a — maybe not an innocent mistake, but negligent, not bad faith? Certainly. What do we do with that? My concern with that is this. If I'm putting myself in the position of the reviewing magistrate, and what if I think, you know, I think this is kind of on the edge here, but I'm reading this about violent crimes, I'm probably more likely to grant the warrant. Because I'm thinking, you know, if it was just drugs, I might say go back and get some more things. But if there's a possibility that somebody could get hurt, I'm probably going to lean towards issuing the warrant. Well, we could — I mean, would you agree that, aside from the fact — this is a question I'll have from your friend — but aside from the fact that the evidence was introduced at trial, we could sever that part of the warrant because the violent crimes only supported the phones — the pictures on the phone? That's correct, Your Honor. Absolutely that is possible, and I believe there's no dispute on that from the United States. But I would say, though, that what we would contend, as I have stated, is that the severance doesn't cure the problem because there's an open question whether that last warrant would have been granted. Well, I — yeah, and I'm not sure the severance is available, and this is an issue for your friend. Right. But this — the photo — there were photos from the phone under the probable cause of violent crime introduced at trial, were there not? My understanding is yes, Your Honor. I didn't do the trial, but as the Court's aware, Mr. Alvarez, I think, after going through several counsel long before he hired us, ended up doing the trial, per se. Let me ask you, whatever the problems are with the — what I would call the cell warrant, because there's a ping warrant, there's a — if you — if the search of the home is constitutional, doesn't that really end the analysis in this case? It's his place. He's got a key to the bedroom, so we know it's his place. And they find large quantities of illegal drugs. Now, I know you want to get to the search of the key, but just stay with me for a second. If what was seized in apartment is not suppressed, does anything else matter? Assuming that there is — that the Court would find that the prior warrants that led to the search of the apartment — Right. That's what I'm saying. — then yes, that I would — If that search is constitutional, then really, whatever deficiencies there are with the cell warrant in this case really don't make a difference. Well, they make a difference only, Your Honor, in the sense that if the Court finds that the cell warrants are supported by probable cause, that's how we get to the search of the apartment. No, I'm — when I say the cell warrant, I'm meaning the one that Judge Johnstone was just talking about. The fourth warrant. My apologies, Your Honor. Yeah. And no, I — and I would concede that, Your Honor. That's true. So now I want to go back to the search incident to arrest. And I'm trying to figure out why that matters either. They already have a warrant to search the apartment, and all they really get incident to arrest, other than the phones, which I've now said, you know, you go down the line on that, is a key to the bedroom, which they would have been entitled to enter in any event given the warrant, wouldn't they? They would, Your Honor. But the issue is — and I think the other question is more basic. At that point, they don't have an arrest warrant. And ultimately, the officers see him on a public street, say, two or three gentlemen in plain clothes with no — not showing badges, or at least not saying that they showed badges in the report, saying, stop police. But do you — are you contending they didn't have probable cause to arrest him? At that point, are you claiming that — At that point — — they shouldn't have arrested him without a warrant? That's too different. See, if he was inside the house, I'd understand. They shouldn't arrest him without a warrant. Right. But at this point, this — what exactly is — I mean, they — and they, I believe, the record even states where he's not — they're not actually looking for him at that point. They just see him there, and they're trying to detain him while they search the apartment. Actually, at that point, they know he's been involved in a phone call that they've listened to with a confidential appointment about selling drugs. They know whatever's happened with the sales. They know that he's inside the apartment because they've pinged. You know, they've got the ping warrant, so they know he's there, and they know he's leaving. And so, at that point, I think they probably have probable cause to — on the — on the drug charges, and they don't want to — they don't want to go out and get a warrant because he might disappear. But do we know that? I mean, the fact is, the guy doesn't know that he's under surveillance, and he's also — they could have gotten an arrest warrant, and they didn't. The other thing, briefly, because I know I'm running out of time, is that with regard to the key, all the key is proof of is that he has a key to the apartment. There's no evidence presented in the record that I saw that he leases the apartment, the utilities are in his name, or anything like that. Oftentimes, people — and there may have been other people who had access to that apartment that are not part here. But — and if he hadn't run, what exactly would they have arrested him for? And I'm an out-zero. Thank you, Your Honors. Thank you very much. Mr. Tartakovsky. Thank you, Your Honors. May it please the Court, Joseph Tartakovsky for the entirety of the argument. They say it on the first pages of the brief, and it just — it follows in every argument they make, which is that this was an informant that was, as they say in their brief, unproven, or you heard now it was a hunch. It wasn't a hunch. What happened here was that Tersi tested the reliability of the informant before any information was brought to a magistrate judge. He personally tested it. The way to think about what happened here is that an informant came to Officer Tersi and said, I have information about my supplier. And what Michael Tersi, in effect, said is, prove it. You say you can buy drugs from this person, show me. And what proceeded to happen was to have this informant replicate in controlled buys exactly what the informant said would happen. Show them every step of Mr. Alvarez's modus operandi. You call this for the drugs. He tells you to go to a specific corner. The C.S. goes there. Runner shows up 10 minutes later. You get the drugs. The police hear this. They see this. They test the drugs from start to finish. And they do this twice over multiple weeks. That's how the C.S.'s reliability is established. Mr. Tartakovsky, I wonder if you could pick up at the end of the process here on my concerns that I was discussing with your friends about the fourth warrant. Did Officer Tersi make a mistake in the fourth warrant by supporting the search of the phone media only with non-existent probable cause of violent crimes? And if so, what do we do with that? I wouldn't say it's a mistake, Judge Johnstone. It's boilerplate in an affidavit. Well, so where in the affidavit does, or in any of the affidavits, is there any suggestion that this investigation is into violent criminal acts? There's no specific facts alleged about violent criminal acts. It's boilerplate, I think, along the lines of when people are involved in drugs, there might also be guns. But you're right. There's no... But there's no connection here. There's drugs, and that gets us probable cause for the communications on the phone. But, I mean, is there anything here with respect to the photos that were introduced at trial that is supported by the affidavit as opposed to violent criminal acts? Yes, and I think you're looking at 4 ER 476. Help me. Help me here. I'm looking exactly there. I think it's... I would just point to that second full paragraph, beginning after reviewing the incident report and based on my training experience. He makes the point that people involved in drug trafficking need to use phones. They need to communicate in all sorts of ways. Yep. Phone calls, but sharing of information. So he says, for instance, communications between co-conspirators is the most frequently accomplished by use of telecommunications. Yeah, and nobody... I don't think anybody is worried about that. Those are not things that indicate media, cameras, the things that are discussed, three paragraphs below. So then I go to the next paragraph, and he says, based on... He says, phones are not just phones. They're computers, and they can have information about phone calls, text messages, multimedia, audio and video messages. That paragraph that follows on, he's saying, phones have a lot of media. And why does that... That's true, but it's unconnected to any belief or background he has in drug trafficking. I would push back on that, Your Honor, for this reason. When you are involved in drug trafficking, it's very common. You take pictures all the time. Sure, and if he said that, then it might be supported by probable cause, but he doesn't. He says, based on the subsequent paragraph, I know that people brag about their actions and take digital photos, video, audio. The only time that it is connected, as opposed to just a generic statement about everyone knows what phones can do nowadays, is with respect to violent criminal acts. I think he's saying here that in connection with drug trafficking, you have to... Multimedia will arise. He doesn't have any specific facts to allege about Mr. Alvarez sharing... He doesn't even say that drug traffickers use it for... It's just a fact about the phones that they can do this. But he doesn't... You know, and the reason this sticks out is because I think, as we've suggested, the investigation has been relatively careful to this point, proceeding on those first three affidavits, and it just looks like some boilerplate got stuck. So assuming that's a concern, what do we do with that? You suggest good faith. What do we do with a good faith exception where it's the same officer who, let's say, made this mistake and is the one who also executes the warrant? I think if you sever the language of violence... Well, we can't... But this... The photos from the phone were introduced at trial. Can we sever in that instance? Well, I don't want to push back on your conclusion, but what I... Because Tersi would not have been able to say, there are pictures on the phone, because he doesn't have Alvarez's phone. So what you have to say is, I'm a drug investigator. I know that when you find a drug dealer's phone, you're going to find pictures of drugs, of cash, of cars. Is your argument... Sever is sort of a strange word. What you're really saying is that the warrant, even absent that allegation, there was ample probable cause to issue a warrant to search the phone. Correct. Correct. And that that allegation, even if incorrect, wouldn't have affected the magistrate's decision to issue the warrant. Correct. Because at that point, you have a man who's been positively linked to this apartment. You have 65 pounds of meth found in the apartment. You have $46,000 in cash found in the apartment. You have the phones found on this guy. And this is a drug trafficker that the information to date is that he's using his phone to arrange drug deals. Well, and of course, they had all of that available at the time, because the phones were... With all of that other stuff was part of what was collected. But does that... Can we deal with this on harmless error, sua sponte? I mean, that argument seems to suggest... Because none of that was the basis of the affidavit. That doesn't appear in the affidavit supporting it. Can we find harmless error because all of that other evidence, and in addition, other evidence not collected at the residence, establishes guilt beyond a reasonable doubt? I think you can. So there's ample probable cause absent that. I think... The question Judge Johnstone asks is, was that probable cause submitted to the magistrate? I don't doubt that there's ample probable cause to justify a warrant to search the phones. Was that... Were the facts that support that probable cause submitted to the magistrate before he issued this warrant? Yes. So does that mean... I guess we're all struggling with this. If you have an application for a warrant that clearly, as to one part, shows probable cause, and you have another part that seems extraneous, not warranted, what happens under that circumstance? Is it harmless error? Do we just... No harm, no foul, because there was enough in the application to justify a warrant on other grounds. How do we deal with that? I think you have just about four ways to deal with it. One is to sever it, say, just assume it was never put in there. Just on... I'll keep track here. I'll let you finish. But I guess in my review of our cases on severance, I'm stuck with the fact that severance, in at least the cases we've reviewed and that you've cited, deal with evidence that was not then put before the jury. I'm worried that that's an obstacle for you there. And these photos were? Photos were put before the jury, photos that linked Alvarez to the house principally. From the phone? From the phone. Okay. So... So there's no evidence of violence at trial. There was no evidence of violence seized. It was... But I think the idea of severance is we can... One of our cases, I think we'd knocked out the entire warrant, and we'd said, actually, no, partial severance is the right thing, and the government won, and we sent it back. And in some of these cases, we've said, well, the severance is okay, but only because the evidence didn't come in. But we'll go back to that. What's the next... Well, let me try to frame it this way. You can see from the investigation, which you are right, was very systematic, very careful. It was very well done. But the central exercise was pinning Mr. Alvarez to this house. That was the task. Who's the man behind the phone, and where does he live, and let's go to the house... And maybe we're suffering from a nomenclature problem with severance. I think the way our cases tend to treat that is we'll allow the evidence in that would have been justified under the real facts, but not the evidence in that wouldn't have been justified under the used false statement here. So for example, if the warrant said we have ample cause to think that he's a drug dealer, and we also believe he's a terrorist and is making bombs in his basement, and there's no facts whatsoever to support the second one, we probably wouldn't let the bombs that was discovered in his basement in, but we would let the evidence about the drug dealing. And so I think severance in our parlance doesn't talk about severing language out of an affidavit. It talks about severing the information that was properly obtained versus the information that was improperly obtained. So now I want to ask, having said that, it seems to me what you were saying to Judge Johnstone is that they didn't introduce at trial anything that wouldn't have been covered by what we're assuming now are the proper portions of the affidavit. Yes, yes. Fair enough. And Judge Johnstone, the photos merely tied him to the house. That's all the pictures taken from the phone. They're basically selfies of Alvarez in the house. Right. And those were the only thing that, the only thing where in the affidavit they seek text and video are in those subsequent paragraphs. Maybe we can parse which one is tied to which, but it's after they've talked about drug traffickers use phones to communicate. Phones also can take photos. Violent criminals use photos on phones to brag about what they've done. Correct. I agree with you. And you want to attach that middle part to what preceded the drug trafficking, and the question is whether it's fairer to attach that to what followed. So if, I guess the, I don't know, the first ground is severance. It seems like maybe one of the questions that Judge Hurwitz is suggesting, you might need something else, right? If severance means we have to take out any evidence that well, we can't do that after the trial. So then what are the other three outs for you? Okay. So inevitable discovery. They had a warrant, a search warrant for Mr. Alvarez. With a cell phone though, do we want to go there in terms of inevitable discovery? You know, the Supreme Court's told us that cell phones have so much on them. And I suspect that the department here took great care to segregate the areas there. Once you get into a cell phone, everything's fair game? Anyway, maybe you'd want to go to your next two given that. The strife argument, which is that they had in a, the fact is that they had at that point probable cause to arrest him, and they would have seized the phones. And if they had seized them, would they have been entitled to search them without a warrant? No, you need a warrant. You need a warrant, right. But the inevitable discovery here is that they would have discovered the phones, but they still need probable cause to search them. Yeah, but they would have written perhaps a different warrant. But I just would Judge Johnstone, may I take your point? But it seems to me that the most reasonable understanding of this warrant and what a magistrate would have assumed was that the probable cause to get into this phone flows from the facts that they just seized 65 pounds of meth, all this cash from this guy's apartment, an apartment that he had just left. And drug dealers use phones, and they had an entitlement to get into the phone to find, yes, text messages or voicemails or pictures. And the in the apartment, that was his argument at trial that you can't prove that I lived here. So I think that the, I don't want it to seem like a stretch. I think the natural way to read this is they're saying drug traffickers use phones. You're going to find a wealth of information on the phone. And then he goes on to the violent piece. If you take the photos from the phone out, is there more than enough proof at trial beyond a reasonable doubt that could render this harmless? I think the answer is yes. Because you would have, you have the drugs, you have him coming out of the apartment, you have him answering the phone, you have the ping data putting him at the apartment, you have the text messages from the phone where deal after deal after deal, I have the drugs, yes, you can buy this meth, that dozens of phones. And so the... And you have his keys. We have his keys. We have pictures of him hanging on the wall in the home. We have all the drugs on the bed, the cash on the bed. We have the jail calls where he's saying, well, they caught me with all the stuff on the bed. I don't really even have an argument. I can't argue that I didn't know what was in there because they have all the jail calls. So the pictures off the phone would be harmless in the sense that they were just a few... I think it's fair to say it was kind of like an icing on the cake of him just putting him physically in the apartment. You can see the apartment in the background. But bottom line, the government's position is, as Chuck Kern used to say, no harm, no foul, right? Yes. Okay. Other questions? All right. Thanks very much to both of you. We appreciate your argument. The case just argued is submitted. Thank you, Your Honor.
judges: SMITH, HURWITZ, JOHNSTONE